IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FRANCES ROBBINS,

    Plaintiff,

v.

                              CV 614-095

OWNERS INSURANCE COMPANY,

    Defendant.

**O R D E R**

Two motions are currently before the Court: Defendant's motion for summary judgment (doc. 49) and Defendant's motion to exclude testimony (doc. 50). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED in part and DENIED in part**, and Defendant's motion to exclude is **DENIED AS MOOT**.

I.    <u>Background</u>

A.    **Factual Background**[1]

Plaintiff Frances Robbins owns a house in Sylvania, Georgia (the "Dwelling"), where she lived with her husband, Thomas Robbins, until 2012. In January 2012, Plaintiff suffered a fall that kept her in the hospital from January until March of that

---

[1] Unless otherwise noted, the Court takes the factual background in this case from Defendant's statement of undisputed material facts. (Doc. 49, Ex. 2.)

year. After being released from the hospital, Plaintiff and her husband returned to the Dwelling. However, soon after their return, it became apparent that they could not live alone because Plaintiff was confined to a wheelchair and Mr. Robbins had become ill. So in April 2012, Plaintiff and Mr. Robbins moved to Statesboro to live with Kenneth Stevens, Plaintiff's son, and Plaintiff continued to live with Stevens at all times relevant to this matter. In fact, as of June 2013, Plaintiff had not spent the night in the Dwelling since April 2012. And from May 2012 until May 2013, the Dwelling was listed for sale. In March 2013, Mr. Robbins passed away.

In August 2012, the Dwelling was vandalized, and Defendant Owners Insurance Company apparently agreed to cover the damage in the amount of $3,592.29. Just prior to the vandalism, Plaintiff submitted a change-of-address form with the United States Postal Service. Just after the vandalism, Plaintiff changed her driver's license to reflect her current address at Stevens's home, registered to vote with Stevens's address, and removed all furniture by October 2012. In June 2013, the Dwelling was damaged by a fire.

**B. The Insurance Policy**

Defendant issued an insurance policy (doc. 49, ex. 20)[2] to Plaintiff and her husband. The Policy remained in effect at all

---

[2] It appears that Defendant has filed multiple copies of the Policy on the docket and that multiple documents were filed with the Policy each time. The Court will refer to the copy filed at Document 49, Exhibit 20. Moreover,

times relevant to this matter and is the subject of this litigation. The portion of the Policy in dispute provides as follows:

**a. Coverage A—Dwelling**

    **(1) Covered Property**

        **We** cover:

        **(a) your** dwelling located at the **residence premises** including structures attached to that dwelling. This dwelling must be used principally as **your** private residence . . . .

(Doc. 49, Ex. 20 at 27.)

**15. Residence premises** means:

    **a.** the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds; or

    **b.** that part of any other building where **you** reside, including grounds and structures

which is described in the Declarations.[3]

(<u>Id.</u>)

    **C. The Current Litigation**

After making the appropriate demand under Georgia law, Plaintiff initiated this lawsuit, alleging that Defendant breached the Policy. (Doc. 1, Ex. 1; Doc. 13.) Specifically, Plaintiff claims that Defendant is liable to Plaintiff for

---

because the page numbers on the Policy do not match the page numbers on the exhibit filed with the Court, to avoid confusion, the Court will reference the page numbers of the entire exhibit.

    [3] The Declarations page reflects that the Dwelling is the described property. (Doc. 49, Ex. 20 at 1.)

additional amounts related to the vandalism, for losses suffered because of the fire, and for bad-faith damages.[4] Defendant now moves for summary judgment on the fire, vandalism, and the bad-faith claims and moves to exclude Plaintiff's expert's testimony.

## II. **Legal Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of

---

[4] Plaintiff also sought damages related to theft, but those claims have since been settled.

4

proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to

5

withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

In this action, the Clerk of the Court gave Plaintiff notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 51.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. Discussion

#### A. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on both Plaintiff's claim related to the fire at the Dwelling and Plaintiff's claim related to the vandalism. Defendant contends that the claim

6

related to the fire is not covered under the policy because Plaintiff did not reside at the Dwelling at the time of the fire. With respect to the vandalism claim, Defendant argues that Plaintiff's claim must fail because she has failed to produce evidence of her damages. Defendant also moves for summary judgment on the bad-faith claim.

i. **The fire-loss claim**

"Under Georgia law, contracts of insurance are interpreted by ordinary rules of contract construction." <u>Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.</u>, 498 S.E.2d 492, 494 (Ga. 1998). Following the rules of construction, "[a]ny ambiguities in the contract are strictly construed against the insurer . . . ." <u>Id.</u> (citation omitted) (internal quotation marks omitted). "Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." <u>Id.</u> Furthermore, "'[w]ords generally bear their usual and common signification.'" <u>State Farm Fire & Cas. Co. v. Am. Hardware Mut. Ins. Co.</u>, 482 S.E.2d 714, 716-17 (Ga. Ct. App. 1997) (quoting O.C.G.A. § 13-2-2(2)).

Defendant argues that Plaintiff is not permitted to recover damages resulting from the fire because, under the Policy, she was required to have resided at the Dwelling at the time of the

7

fire.[5] As noted above, the Policy covers Plaintiff's "dwelling located at the **residence premises** including structures attached to that dwelling. This dwelling must be used principally as **your** private residence . . . ." (Doc. 49, Ex. 20 at 27.) Residence premises is defined as "the one or two family dwelling where **you** reside . . . or that part of any other building where **you** reside . . . ." (Id.) Plaintiff does not challenge the language of the Policy or the contention that she must have resided at the Dwelling at the time of the fire for coverage to be appropriate. Georgia courts and courts in this circuit interpreting Georgia law find agreements similar to the one before the Court to unambiguously require that the insured reside at the insured premises. See Epps v. Nicholson, 370 S.E.2d 13, 13-14 (Ga. Ct. App. 1988) (finding a similar policy to unambiguously require that the insured reside on the premises and finding that, because the insured used the property as a rental property, she did not); Lyons v. Allstate Ins. Co., 996 F. Supp. 2d 1316, 1318-20 (N.D. Ga. 2014) (finding a policy to unambiguously require that the insured reside on the property and finding that she did not because, during the relevant periods, the house either remained empty or other people lived there, even though the insured kept furniture and personal items

---

[5] Defendant actually maintains that the Dwelling must have been Plaintiff's exclusive residence. Although not dispositive in this case, Defendant's argument is meritless and overzealous. Defendant points to no portion of the Policy—and the Court cannot locate any—that mandates that the Dwelling be Plaintiff's only residence.

8

at the house, kept the utilities on, maintained the lawn, kept the house in good repair, and slept at the house a few times a year). Thus, this case hinges on whether Plaintiff resided at the Dwelling at the time of the fire.[6] Reside is not defined in the Policy, and neither side disputes its meaning. Following the ordinary meaning of reside, Plaintiff did not reside at the Dwelling at the time of the fire.

Plaintiff has not spent a single night in the Dwelling since April 2012. Not long after she left the Dwelling, Plaintiff submitted a change-of-address form to the postal service, changed the address on her driver's license to Stevens's address, registered to vote with Stevens's address, and informed her doctors and banks that she lived at Stevens's address. Additionally, for a year following her leaving, the Dwelling was listed for sale. Viewing these facts in the light most favorable to Plaintiff, no reasonable jury could conclude that Plaintiff resided at the Dwelling. Accordingly, Defendant did not improperly deny coverage.

Essentially, Plaintiff raises two alternative arguments. First, she argues that she did not reside at the Dwelling because of the August 2012 vandalism. Second, she argues that Defendant is estopped from denying coverage because it knew that she had moved. Both of these arguments fail.

---

[6] The Court acknowledges that Defendant apparently did not deny coverage on the vandalism claim, and Plaintiff alludes to a waiver argument. However, Plaintiff does not cite any authority on that issue. The Court, therefore, declines to engage in a lengthy discussion on that issue.

9

Although there is evidence that, following the vandalism, the Dwelling was in disrepair, Plaintiff has pointed to no evidence that the vandalism is the reason Plaintiff did not reside there. In an attempt to establish a link between the vandalism and her not residing at the Dwelling, Plaintiff points to evidence that one of Defendant's employees instructed her not enter the Dwelling soon after the vandalism and her own affidavit that she filed in response to Defendant's motion for summary judgment. The employee's statement, without more, does not establish that she did not reside there because of the vandalism. Plaintiff's affidavit simply states that she planned to one day return to the Dwelling and that the Dwelling was not livable. This conclusory statement, however, does not adequately controvert Plaintiff's own deposition testimony, which establishes that she was incapable of moving back into the Dwelling from the time she left through 2013. (Doc. 49, Exs. 15-16 ("Pl. Dep.") at 60-61, 83-88, 119-20.) This is not the case where an insured lives in her home until the day of vandalism, is forced to move because of the vandalism, and the home burns during the repairs. Plaintiff left the dwelling because of her health in April 2012, did not spend a night there from then until the time of the vandalism, and has acknowledged that she was not capable of moving back into the Dwelling at the time of the fire.

With respect to Plaintiff's estoppel argument, she argues that because Defendant accepted premium payments from and corresponded with Plaintiff while she lived at Stevens's home, Defendant is estopped from denying coverage. That is, Plaintiff claims that Defendant knew that she no longer lived at the Dwelling so it could not deny coverage. This argument fails because under Georgia law, "the insured[] [is] bound to know the rights of the insurer . . . ." Fire Cas. Ins. Co. of Conn. v. Fields, 96 S.E.2d 502, 504 (Ga. 1957) (holding that it was not improper for an insurer to deny coverage based on a building's vacancy because the policy excluded coverage, even though the insurance agent knew the building was vacant and assured the insureds that it would be covered). See also Chi. Ins. Co. v. Cent. Mut. Ins. Co., 494 S.E.2d 1, 3-4 (Ga. Ct. App. 1997). Here, Plaintiff was bound to know that for there to be coverage, she was required to reside at the Dwelling. Accordingly, Plaintiff's estoppel claim fails. The Court, therefore, finds summary judgment on the claim for damages from the fire appropriate.[7]

### ii. The vandalism claim

As discussed above, in addition to damages related to the fire, Plaintiff seeks damages based on the August 2012 vandalism. On this issue, Defendant claims that Plaintiff has

---

[7] Defendant's brief separately addresses issues Defendant has with Plaintiff's damage calculation for the fire claim. Because the Court finds that Defendant did not improperly deny coverage, it is not necessary to separately address those arguments.

11

failed to present evidence of certain damages and that some of the damages are speculative. Plaintiff seeks $21,533.44 related to the vandalism claim. (Doc. 13 ¶ 20.) Defendant argues that Plaintiff has failed to prove roughly $10,000.00 of that amount because the receipts she disclosed total just over $11,000.000 and because Stevens, who testified about these damages, failed to adequately explain the missing amount. Stevens, however, has supplemented his deposition testimony with an affidavit and explained the missing amount. (Doc. 56, Ex. B.) Accordingly, Plaintiff has presented sufficient evidence of her damages to survive summary judgment.

Next, Defendant challenges Plaintiff's installation of a $4,800.00 HVAC system as part of the $21,533.44 claim. Although Defendant's argument is not entirely clear, it appears that Defendant is claiming: (1) that the HVAC system is not an appropriate repair because the Dwelling was previously cooled only by window-unit air conditioners; and (2) even if it is, Plaintiff has failed to produce evidence to support the cost of the repair. Defendant does not cite any law to support these arguments. First, as Defendant acknowledges, Plaintiff has presented a handwritten receipt for the HVAC unit. Defendant has not cited any—and the Court is not aware of any—law that prevents the introduction of handwritten receipts as evidence of expenses. Second, to the extent that Defendant challenges the reasonableness or necessity of spending $4,800.00 on an HVAC

12

system, it may do so to a jury, but summary judgment is not appropriate on this issue.

Defendant also asserts simply that all of the requested damages related to the vandalism are not recoverable as a matter of law. Specifically, Defendant argues that Plaintiff was remodeling the Dwelling and has not sufficiently shown what costs flow from the remodel and what costs were caused by the vandalism. The Court disagrees. In his deposition and his subsequent affidavit, Stevens explained the receipts and costs and discusses how they relate to the vandalism. (Doc. 49, Exs. 12-13 ("Stevens Dep.") at 62-77.) That is, Stevens's deposition testimony represents that expenses were incurred while repairing the vandalism damage. The only evidence that Defendant points to regarding its renovation theory is Plaintiff's testimony that, in the process of repairing the damage, Stevens may have been attempting to make the Dwelling a bit more comfortable than it was just prior to the vandalism. To the extent Defendant seeks to argue that Plaintiff's requested damages were actually part of a remodeling project, it must do so to a jury. Summary judgment is not appropriate on this issue.

### iii. Plaintiff's bad-faith claim

In her complaint, Plaintiff also seeks bad-faith damages pursuant to O.C.G.A. § 33-4-6. An insured may recover under O.C.G.A. § 33-4-6 if the insurer refused to cover a claim in bad faith. Bad faith means "any frivolous and unfounded refusal in

13

law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." Fortson v. Cotton Mut. Ins. Co., 308 S.E.2d 382, 384 (Ga. Ct. App. 1983) (citation omitted) (internal quotation marks omitted).

Because the Court finds that Defendant did not improperly deny Plaintiff's claim for damages from the fire, Defendant cannot be liable for acting in bad faith with regard to that issue. Plaintiff's complaint—and Defendant's motion—address a claim for bad faith with regard to damages from the vandalism claim. In her response to Defendant's motion, however, Plaintiff did not address that argument. Thus, the Court will not engage in a lengthy discussion on this issue and simply notes that Defendant has asserted a factual dispute about the reasonableness of those damages, which would preclude Plaintiff's bad-faith claim. See Fortson, 308 S.E.2d at 385 ("Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact."). Accordingly, summary judgment is appropriate on the bad-faith claims.

In sum, Defendant's motion for summary judgment as it relates to Plaintiff's claim for damages from the fire is **GRANTED** because Plaintiff did not reside at the Dwelling; Defendant's motion for summary judgment as it relates to Plaintiff's damages from the vandalism claim is **DENIED** because Plaintiff has presented sufficient evidence of those damages;

14

and Defendant's motion for summary judgment as it relates to Plaintiff's bad-faith claim is **GRANTED** because Defendant did not deny coverage in bad faith.

**B. Defendant's Motion to Exclude**

In addition to its motion for summary judgment, Defendant has moved to exclude Plaintiff's expert's testimony. The expert's opinion addresses the value of the Dwelling for purposes of damages from the fire. Because the Court has granted summary judgment on that claim, it finds it unnecessary to separately address the motion to exclude. Accordingly, Defendant's motion is **DENIED AS MOOT**.

### IV. Conclusion

For the reasons discussed above, Defendant's motion for summary judgment (doc. 49) is **GRANTED in part and DENIED in part**, and Defendant's motion to exclude (doc. 50) is **DENIED AS MOOT**. Plaintiff's claim related to the vandalism shall proceed to trial.

**ORDER ENTERED** at Augusta, Georgia this 24th day of February, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA